**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CARMALITA BOLDEN,

    Plaintiff,                             CASE NO. 20-12809

v.                                          HON. DENISE PAGE HOOD

FIRST PREMIER BANK,

    Defendant.
_____/

**ORDER GRANTING FIRST PREMIER BANK'S**
**MOTION TO DISMISS [ECF No. 28]**

**I.    INTRODUCTION**

This lawsuit arises out of Plaintiff Carmalita Bolden's allegations that Defendants First Premier Bank ("FPB"), Trans Union, LLC ("Trans Union"), Equifax Information Services, LLC, and Nelnet, Inc. failed to remove inaccurate dispute remarks from tradelines in Plaintiff's credit files. All Defendants except for FPB have been dismissed. On October 26, 2021, FPB filed a Motion to Dismiss. [ECF No. 28] The Motion has been fully briefed, and a hearing was held on December 14, 2021. The Motion to Dismiss is granted.

**II.    BACKGROUND**

On October 6, 2020, Plaintiff obtained her Trans Union credit disclosure and

1

noticed the FPB tradeline reporting with a notation of "account in dispute" (the "Errant Tradeline"), which Plaintiff alleges made the tradeline inaccurate. Plaintiff's Amended Complaint alleges that, on or about November 30, 2020, she "submitted a letter to Trans Union requesting that the credit bureau remove the notation of 'account in dispute.'" ECF No. 10, PageID.66 at ¶12. She further alleges that "Trans Union forwarded the consumer dispute to [FPB]" and "[FPB] received the consumer dispute from Trans Union." *Id.* at ¶¶13-14.[1] Plaintiff did not receive any investigation results from Trans Union. *Id.* at ¶15. "[O]n January 19, 2021, Plaintiff obtained her Trans Union credit disclosure, which showed that Trans Union and FPB failed or refused to remove the notation of account in dispute." *Id.*

Plaintiff has filed claims against FPB for negligent and willful violation of the Fair Credit Reporting Act, 15 U.S.C. 1681*et seq.* ("FCRA"). Plaintiff alleges that FPB negligently and willfully "failed to review all relevant information available to it and provided by Trans Union as required by 15 USC 1681s-2(b)" and then "failed to direct Trans Union to remove the Errant Tradeline." ECF No. 10, ¶¶ 31-32 (Count III) and 38-39 (Count IV), respectively. Plaintiff contends that the failure to remove

---

[1] No party has filed on the record a copy of Plaintiff's November 30, 2020 letter to Trans Union, so it is not clear if Plaintiff only requested that the "account in dispute" designation be removed or if she also stated that that the Errant Tradeline was inaccurate and in dispute.

2

the notation of "account in dispute" makes the FPB tradeline false and misleading to any user of the credit reports. Plaintiff claims she has been damaged as the notation of "account in dispute" has prevented her from obtaining any mortgage loan or refinancing a mortgage loan because no conventional lender will grant a mortgage if a credit report has any tradelines or other items flagged as disputed. Plaintiff claims that, as a direct and proximate cause of FPB's negligent and/or willful failure to comply with the FCRA, Plaintiff has suffered credit and emotional damages.

## III. APPLICABLE LAW

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. Accepting all factual allegations as true, the court will review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. ANALYSIS

Under 15 U.S.C. § 1681i(a)(2), if a consumer reporting agency ("CRA") (such as Trans Union) receives notice of a dispute from a consumer, it must forward that notice to the furnisher (such as FPB). § 1681s-2(b) provides that furnishers have the following duties upon notice of dispute:

> (1) In general
> 
> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
> 
>     (A) conduct an investigation with respect to the disputed information;
>     (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>     (C) report the results of the investigation to the consumer reporting agency;
>     (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>     (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>         (i) modify that item of information;
>         (ii) delete that item of information; or
>         (iii) permanently block the reporting of that item of

information.

Courts have held that § 1681s-2(b) imposes an obligation on a furnisher (such as FPB) to conduct an investigation after receiving notice from the CRA that a consumer disputes information that a furnisher reported, which a CRA is required to do pursuant to § 1681s-2(a). The statutory language of § 1681s-2(b) makes clear that the duties identified thereunder do not arise until the furnisher of information receives notice from a CRA that a consumer is disputing credit information. *Id.; Scott v. First S. Nat'l Bank*, 936 F.3d 509, 518 (6th Cir. 2019) ("One way that the FCRA protects furnishers is by requiring that a consumer file a dispute with a consumer reporting agency, and that the consumer reporting agency screen the complaint and provide notice of the dispute to a furnisher if warranted, before the consumer may assert a private right of action against the furnisher."); *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 614 (6th Cir. 2012) (furnisher's duties under §1681s-2(b) are not triggered until it receives notice pursuant to § 1681i(a)(2)); *Shaw v. Equifax Info. Sols.*, Inc., 204 F.Supp.3d 956, 959 (E.D. Mich. 2016) (Hood, J.) (same).

FPB first argues that, as a furnisher, it cannot be liable under § 1681s-2(b) for failing to remove a dispute notation where Plaintiff (the consumer) did not directly inform FPB (the furnisher) that the debt was no longer disputed. Relying on *McGee*

5

*v. Equifax Info. Servs., LLC*, No. 1:18-cv-04144-MHC-CMS, 2019 WL 2714505 (N.D. Ga. Mar. 19, 2019), R&R adopted, 2019 WL 2714497 (N.D. Ga. Apr. 9, 2019). In *McGee*, the court granted a Rule 12(b)(6) motion to dismiss claims that are the same as the claims alleged here. The plaintiff in *McGee* alleged that she initially disputed a tradeline reported by Medical Data Systems, Inc. ("MDS") but, after having an apparent change of heart, subsequently reported to Equifax and Experian that she "no longer disputed the MDS Trade Line[.]" *McGee*, 2019 U.S. Dist. LEXIS 111356, at **2, 5.

The *McGee* court explained that, because the plaintiff did not allege that she <u>directly informed</u> the furnisher that she no longer disputed the debt, the furnisher "was required to retain the 'account in dispute' language and did not violate any of its obligations under the FCRA." *Id.* at *8. The *McGee* court stated that FCRA cannot compel a result where a furnisher can be liable for reporting an account in dispute because FCRA imposes liability for a furnisher removing "the 'account in dispute' language based solely on the word of Equifax and/or Experian[.]" *Id.* at *8. The *McGee* court determined that allegations in the complaint did not show that the furnisher failed to uphold any of its obligations under the FCRA when it continued to report the debt as disputed. *Id*.

FPB also contends that this case parallels the facts in *Roth v. Equifax Info. Servs., LLC*, 2:16-cv-04325 JWS, 2017 WL 2181758 (D. Ariz. May 17, 2017). In *Roth*, the plaintiff alleged that she "no longer disputed" a tradeline with RSI and sent a letter to Equifax "explaining her position and requesting that it remove the dispute language associated with the RSI Trade Line." *Roth*, 2017 U.S. Dist. LEXIS 75977, at *2. The plaintiff alleged that Equifax then forwarded that information (the plaintiff's request to remove the dispute language) to RSI but that RSI did not remove the dispute language despite the fact that she no longer wanted to dispute it. *Id*. As in this case, the plaintiff in *Roth* filed suit against RSI, alleging that RSI failed to conduct an investigation, as required by § 1681s-2(b). *Id*. at *9. The *Roth* court held that, because the plaintiff had originally reported to RSI that she disputed the debt, RSI was required under § 1681s-2(a)(3) to retain the disputed status.

FPB argues that the same result reached in *McGee* and *Roth* is appropriate in this case,[2] noting that Plaintiff alleges she had a change of heart and "no longer

---

[2] Plaintiff also cites the following cases that are generally *McGee* progeny: *Drummond v. Equifax Info. Servs., LLC et al.*, No. 5:20-cv-1362, (W.D. Tex. Jul., 14, 2021); *White v. Equifax Info. Servs., LLC, et al.*, 2020 U.S. Dist. LEXIS 254930 (N.D. Ga. Nov. 27, 2020), R&R adopted (N.D. Ga. Feb. 17, 2021); *Foreman v. Equifax Sols., LLC*, No. 1:20-CV1871-TCB-WEJ, 2020 U.S. Dist. LEXIS 248498 (N.D. Ga. Nov. 10, 2020), R&R adopted (N.D. Ga. Feb. 19, 2021); *Hardnett v. Equifax Info. Servs., LLC, et al.*, 2020 U.S. Dist. LEXIS 254604, 1:20-cv-3017-LMM-RDC (N.D. Ga.) (R&R); *Fisher v. Equifax Info. Servs., LLC, et al.*, 1:20-cv-2852-SDG-CMS (N.D. Ga. Jan. 22, 2021) (R&R); *Griffin v. Equifax Info.*

disputes" the FBP Errant Tradeline. ECF No. 10, ¶5. She alleges she "submitted a letter to Trans Union requesting that the credit bureau remove the notation of 'account in dispute,'" i*d*. at ¶ 12, but she did not contact FPB directly. FPB believes that § 1681s-2(a)(3) requires FPB to maintain the "account in dispute" notation because Plaintiff never contacted FPB directly.

Plaintiff argues that the FCRA does not require a consumer to send a dispute directly to a furnisher, rather than to a CRA. The Court notes that there is no express provision in the FCRA that requires a consumer to directly notify a furnisher of a dispute with its tradeline (and FPB has not identified such a requirement). As Plaintiff argues, the cases upon which FPB relies for this proposition are primarily from the Northern District of Georgia (though *Roth* is from Arizona and one other case is from the Western District of Texas) and can be distinguished from the instant case. In *McGee* and *Roth*, the courts held that, because the plaintiff initially disputed its debt directly to the furnisher, the furnisher was not obligated to (and could not) remove the dispute status absent directly from the consumer. *See McGee*, 2019 WL 2714505 at **1-3; *Roth*, 2017 WL 2181758 at *3. In this case, Plaintiff initially disputed its debt to the CRAs, not FPB.

---

*Servs., LLC, et al.*, 1:20-cv-2316-TWT-CCB (N.D. Ga.Jan. 25, 2021), R&R adopted (N.D. Ga. Feb. 17, 2021).

Plaintiff urges the Court to follow *Harris v. Equifax Info. Servs., LLC*, No. 20-cv-1770, 2020 WL 6545977 (M.D. Fla. Nov. 6, 2020), which Plaintiff insists involves a nearly identical complaint to hers. *Id*. at *1. The *Harris* defendant's motion to dismiss cited *Roth* and *McGee* for the same reasons as cited by FPB, but the court found that "[w]hile the cases cited by [the defendant] support its position, they involve slightly different facts and are not binding authority on this Court" and denied the motion to dismiss. *Id*. at *2; *Harris*, No. 20-cv-1770 at ECF No. 9.

In another court, a motion to dismiss filed by Trans Union regarding a complaint nearly identical to that filed by Plaintiff was denied. *See Wheeler v. Trans Union, LLC*, No. 17-cv-3328, 2018 WL 2431876 (D. Ariz. May 30, 2018). In *Wheeler*, the plaintiff sent dispute letters to CRAs stating that he no longer disputed certain tradelines and wanted the dispute language removed. *Id*. at *1. When the plaintiff obtained his credit files, he noticed that the dispute language had not been removed. *Id*. Trans Union moved to dismiss the complaint, and the court denied the Rule 12(b)(6) arguments. *Id*. at *5. The court held that the plaintiff stated a claim for relief for Trans Union's violation of 15 U.S.C. § 1681e(b) of the FCRA because the plaintiff (1) "has stated a claim based on his alleged facts that Trans Union used unreasonable procedures;" (2) the plaintiff's "claim for damages is sufficiently

9

alleged to survive a motion to dismiss;" and (3) the plaintiff "has alleged sufficiently particular actual damages to state a claim." *Id*. at \*\*3-4.

Plaintiff contends that *Roth* and *McGee* were wrongly decided because § 1681s-2(a)(3) does not, as the courts cited by her held, require the furnisher to continue to report the debt as disputed unless the plaintiff directly informed the furnisher that she no longer disputed the debt. *Roth*, 2017 WL 2181758 at \*3; *McGee*, 2019 WL 2714505, at \*2-3. Section 1681s-2(a)(3) provides: "If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer." 15 U.S.C. § 1681s-2(a)(3). Although this provision states what a furnisher must do when it receives a direct dispute from a consumer, it does not specify what a furnisher must do if it later receives notice from the consumer (either directly or indirectly via a CRA) that the consumer no longer disputes the account and wants the dispute remarks removed.

Plaintiff argues that here is good reason for that because the present circumstances are covered by § 1681s-2(b), rather than by 15 U.S.C. § 1681s-2(a). Plaintiff relies on an Eleventh Circuit case, *Green v. RBS Nat'l Bank*, 288 Fed. App'x 641, 642 (11th Cir. 2008), which concluded that:

> The FCRA imposes two separate duties on furnishers. First, § 1681s–2(a) requires furnishers to submit accurate information to CRAs. Second, § 1681s–2(b) requires furnishers to investigate and respond promptly to notices of customer disputes.

Plaintiff insists that Section 1681s-2(a)(3) creates a duty for the furnisher to report information as disputed after a consumer directly disputes the information to the furnisher, but that is all. Plaintiff suggests that *Roth* and *McGee* went further and created a previously non-existent duty: to continue to report information as disputed unless the consumer directly notifies the furnisher that he no longer disputes the information.

Plaintiff believes Congress created 15 U.S.C. § 1681s-2(b), not 15 U.S.C. § 1681s-2(a)(3), to handle investigations of disputed information. As Plaintiff did not initially dispute her account directly to FPB, she contends that § 1681s-2(a)(3), *Roth*, and *McGee* do not apply to this case. Plaintiff argues that 15 U.S.C. §§ 1681i(a)(2), 1681s-2(b), and well-established case law provide that a consumer may dispute inaccurate information to a CRA, that the CRA must forward the dispute to the furnisher, and that the furnisher must reasonably investigate the dispute. Accordingly, Plaintiff insists that § 1681s-2(b) – not 15 U.S.C. § 1681s-2(a)(3) – governs whether a furnisher must remove an inaccurate dispute remark in response to a consumer's dispute of that remark.

The Court concludes that it need not decide whether FPB had a duty to

11

investigate Plaintiff's dispute when Plaintiff did not directly dispute the Errant Tradeline to FPB.  As discussed below, whether or not Plaintiff had to directly dispute the Errant Tradeline to FPB, the Court finds that Plaintiff failed to state a claim under §1681s-2(b) because she failed to allege facts – beyond mere conclusory statements – that she disputed to Trans Union or FPB the "the completeness or accuracy of any information" reported, which is required to trigger a duty to investigate under § 1681s-2(b).

In this action (and in her response brief), Plaintiff alleges that FPB is liable for failing to conduct a proper investigation under § 1681s-2(b) after receiving notice from the CRAs that she no longer disputed her account. But, as detailed above, Plaintiff has alleged that: (a) she requested that Trans Union "**remove**" the Errant Tradeline ("account in dispute"); (b) Trans Union forwarded the request to remove the Errant Tradeline to FPB; and (c) FPB received that "consumer dispute." ECF No. 10, PageID.66 at ¶¶12-14.  Plaintiff did not give any indication in her request to Trans Union why  the "account in dispute" tradeline was wrong – she just requested that it be removed.  As FPB asserts, there was no "dispute" to investigate and Plaintiff's request for a withdrawal of a tradeline does not constitute a new "dispute" sufficient to trigger an obligation of FPB to conduct an investigation under § 1681s-2(b). *Briscoe v. Equifax Info. Servs., LLC*, 2020 U.S. Dist. LEXIS 2509431, *14

(N.D. Georgia, Oct. 17, 2020) ("Plaintiff has cited no FCRA provision or binding case law providing that when a consumer unilaterally changes her mind and informs a CRA (but not the furnisher) that she no longer disputes an account, but provides no specifics or reasons or facts to support her change of heart, that such a withdrawal constitutes a new 'consumer dispute' for purposes of the FCRA.").

The Amended Complaint reflects that Plaintiff did not allege that she informed Trans Union that the "account in dispute" notation was inaccurate or in dispute – she simply asked Trans Union to remove the notation of "account in dispute." As § 1681s-2(b) requires that the furnisher receive notice from a CRA that the consumer is disputing credit information, FPB maintains it was not obligated to investigate because it only has to do so after receipt "of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency." § 1681s-2(b)(1); *Drummond*, No. 5:20-cv-1362, at *13 ("Requesting that a notation be removed is not inaccurate information that can form the basis of a §1681s-2(b) claim.");

The Court is not persuaded by Plaintiff's contention that she has alleged that she no longer disputes the FPB tradeline and requested that the "account in dispute" notation to be removed because it was inaccurate. Citing ECF No. 10, Page ID 66 at ¶¶ 11, 12. Although Paragraph 11 of the second amended complaint contains the

word "inaccurately," which may reflect that she no longer disputes the Errant Tradeline ("account in dispute" notatioin), ECF No. 10, Page ID 66 at ¶ 5, there is no allegation of how or why the Errant Tradeline was "inaccurate" or that information regarding how or why the Errant Tradeline was communicated to FPB.

Plaintiff asserts that she is not required to plead the "particularized facts" sought by FPB for two reasons: (1) she does not allege fraud, mistake, special damages, or any other matter that requires pleading facts with particularity, Fed. R. Civ. P. 9(b), (g), and case law does not hold Plaintiff to FPB's standard, but merely requires that Plaintiff plead sufficient facts to state a plausible claim for relief, *Iqbal, supra*; and (2) she cannot plead particularized facts about FPB's investigation of Plaintiff's disputes because Plaintiff cannot know the details until Plaintiff engages in discovery.

The Court finds that Plaintiff's argument is misplaced, as FPB is not suggesting that she prove fraud or that FPB conducted a reasonable investigation. Rather, FPB is contending, as discussed above, that Plaintiff offered no detail or basis for why: (1) she wanted the Errant Tradeline removed; or (2) the notation "account in dispute" – a tradeline generated because Plaintiff originally and undisputedly challenged the tradeline -- was inaccurate.

14

Ass FPB argues, a furnisher has no obligation to conduct an investigation upon receiving a notice from the CRA that the consumer allegedly no longer disputes the subject account because the furnisher would have nothing to investigate. "The decision to dispute or not dispute a debt is completely up to the debtor." *Roth*, 2017 U.S. Dist. LEXIS 75977, at *9. The Court agrees with this reasoning under the facts of this case, as it is unclear what a reasonable investigation by FPB would have uncovered. The investigation would have revealed that Plaintiff sent a request to remove the Errant Tradeline, but FPB would have no idea why.

For the reasons stated above, the Court finds that Plaintiff has failed, as a matter of law, to state a claim upon which relief can be granted for FPB's alleged negligent and intentional violations of the FCRA. FPB's Motion to Dismiss is granted, and Plaintiff's cause of action is dismissed.

## V.   CONCLUSION

For the reasons stated above,

IT IS ORDERED that FPB's Motion to Dismiss [ECF No. 28] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's cause of action is DISMISSED WITH PREJUDICE.

Dated: May 6, 2022

                                             s/Denise Page Hood
                                             DENISE PAGE HOOD
                                             UNITED STATES DISTRICT JUDGE